B. McKay Mignault, Chief Bankruptcy Judge
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| IN RE:<br><br>ROGER LEE VANCE and<br>MARSHA CAROLINE VANCE,<br><br>Debtors. | CASE NO. 3:22-bk-30270<br><br>CHAPTER 13<br><br><br>JUDGE B. MCKAY MIGNAULT |

**MEMORANDUM OPINION AND ORDER**
**DENYING DEBTORS' MOTION FOR INSURANCE PROCEEDS**

---

On August 26, 2026, the Court held a hearing (the "Hearing") to consider the *Debtors' Motion to Allow Auto Club Enterprises to Pay Insurance Proceeds Directly to Debtors and to Allow Debtors to Exempt and Receive the Proceeds* [dkt. 148] (the "Motion"); the responses filed thereto by the Chapter 13 Trustee (the "Trustee") [dkts. 152, 153, 199]; and the responses filed thereto by Santander Consumer, N.A. ("Santander") [dkts. 181, 198]. Present at the Hearing were counsel for the Debtors, Joe M. Supple; counsel for the Chapter 13 Trustee, Virginia A. Lemon; and counsel for Santander, Thomas L. Canary, Jr. For the reasons set forth herein, the Court **DENIES** the Debtors' Motion.

**I.**

The relevant facts underlying the Motion are undisputed. The Debtors filed a Chapter 13 bankruptcy petition on November 14, 2022. At the time of the bankruptcy filing, the Debtors owned a 2020 Ford Ecosport (the "Vehicle"), in which Santander held a perfected security interest. *See* Proof of Claim No. 10. The Debtors' Chapter 13 plan, confirmed on May 22, 2023, provided for the surrender of the Vehicle. *Order Confirming Chapter 13 Plan* [dkt. 81] (the

"Plan"). Despite the Plan providing for surrender of the Vehicle, Santander made no effort to retrieve its collateral.

At some point after confirmation, the Debtors purchased motor vehicle insurance on the Vehicle. They did not list Santander as a loss payee on the postpetition insurance policy, but they continued to drive the Vehicle. On November 1, 2025, more than two years after confirmation, Mr. Vance was involved in a motor vehicle accident while driving the Vehicle. The insurer, Auto Club Enterprises, rendered the Vehicle a total loss and offered to pay the Debtors $9,028.00 (the "Insurance Proceeds"). *See* Mot., Ex. A [dkt. 148-1].

Each party asserts a right to the Insurance Proceeds. For their part, the Debtors assert that Santander's rights were extinguished by its failure to retrieve the Vehicle pursuant to the Plan. The Trustee counters that the Insurance Proceeds are property of the estate because they were generated by a postpetition insurance policy that did not list Santander as the loss payee; therefore, in the Trustee's view, the Insurance Proceeds are not proceeds of prepetition collateral subject to a continuing lien under 11 U.S.C. § 552(b). Finally, Santander argues that it has an interest superior to the Debtors and the Trustee because under West Virginia law—specifically, the Uniform Commercial Code ("UCC")—it has a perfected security interest in the Insurance Proceeds. The question presented by the parties is apparently one of first impression: whether a postpetition insurance policy in a Chapter 13 case is subject to a creditor's prepetition security interest, where the creditor, who failed to retrieve the surrendered collateral, was not named as a loss payee under the postpetition policy.

**II.**

The Court begins with the Debtors' assertion that they are entitled to the Insurance Proceeds due to Santander's failure to retrieve the collateral. Section 1325(a)(5)(C) provides that

a Chapter 13 plan may be confirmed when "the debtor surrenders the property securing such claim to such holder." 11 U.S.C. § 1325(a)(5)(C). While the term "surrender" is not defined in the Bankruptcy Code, its "general meaning is not a mystery." *Internal Revenue Serv. v. White (In re White)*, 487 F.3d 199, 205 (4th Cir. 2007). As the Fourth Circuit explained in *White*, "surrender" means that "the secured creditor ultimately hold[s] all rights, including the right of possession, in the property securing the claim." *Id.* "Surrender" in the context of § 1325(a) has been defined as the debtor's "'relinquishment of any rights in the collateral,'" including the right of possession. *Id.* (quoting 8 *Collier on Bankruptcy* ¶ 1325.06[4] (15th ed. 2005)). Surrender does not eliminate Santander's lien merely because it failed to exercise its right to possession. *See Frazier v. Lendmark Fin. Servs., LLC (In re Frazier)*, 672 B.R. 878, 886 (Bankr. S.D.W. Va. 2025) ("[D]espite providing for a surrender option, the Bankruptcy Code 'does not force creditors to assume ownership or take possession of collateral.'" (quoting *Canning v. Beneficial Maine, Inc. (In re Canning)*, 442 B.R. 165, 172 (Bankr. D. Me. 2011)); *Bentley v. OneMain Fin. Grp., LLC (In re Bentley)*, No. 19-8026, 2020 Bankr. LEXIS 1837, at *34, 2020 WL 3833069, at *12 (B.A.P. 6th Cir. July 8, 2020) (holding that "a debtor's surrender of collateral . . . does not require a creditor to take possession thereof"); *In re Service*, 155 B.R. 512, 514 (Bankr. E.D. Mo. 1993) (holding that the "[d]ebtors may not compel th[e] creditor to accept surrender nor enforce its rights and take title to the realty"). Accordingly, the Court is compelled to reject the Debtors' argument that they are entitled to the Insurance Proceeds as a result of Santander's failure to retrieve the Vehicle.

But that does not resolve Santander and the Trustee's competing claims to the Insurance Proceeds, including the question of whether Santander's security interest extended to the Insurance Proceeds when the Vehicle was destroyed postpetition. That question is governed

by 11 U.S.C. § 552. Section 552(a) establishes the general rule that, "[e]xcept as provided in subsection (b) . . . property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." 11 U.S.C. § 552(a). Section 552(b) creates an express exception for proceeds of prepetition collateral. It provides, in relevant part:

> [I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent *provided by such security agreement and by applicable nonbankruptcy law*, except to any extent that the court, after notice and a hearing and *based on the equities of the case*, orders otherwise.

*Id.* § 552(b)(1) (emphasis added). Here, there is no dispute that the underlying security agreement provided that Santander's security interest extended to all proceeds of the Vehicle. *See* Proof of Claim No. 10, at 7 ("You give us a security interest in . . . [a]ll money or goods received (proceeds) for the vehicle."). The question, therefore, is whether under "applicable nonbankruptcy law," the Insurance Proceeds are "proceeds" of Santander's prepetition collateral and thus remain subject to its perfected security interest.

Section 552(b) does not "establish the parameters of 'proceeds.'" *Unsecured Creditors' Comm. v. Marepcon Fin. Corp. (In re Bumper Sales, Inc.)*, 907 F.2d 1430, 1437 (4th Cir. 1990). The Fourth Circuit has adopted the view that, in the absence of a Code definition and § 552(b)'s language limiting any security interest "to the extent provided by . . . applicable nonbankruptcy law," that "Congress intended to defer to state law, *i.e.,* to the UCC." *Id.* (citing 4 *Collier on Bankruptcy* ¶ 552.02 (8th ed. 1989)). As the Fourth Circuit explained in *Bumper Sales*, this approach "is consistent with the unstated rule of the many courts that have looked to the UCC

in applying Section 552 of the Code." *Id.* Under *Bumper Sales*, the Court must apply West Virginia's UCC in this case.[1]

West Virginia's UCC defines "proceeds" as follows:

> (A) Whatever is acquired upon the sale, lease, license, exchange or other disposition of collateral;
>
> (B) Whatever is collected on, or distributed on account of, collateral;
>
> (C) Rights arising out of collateral;
>
> (D) To the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, the collateral; or
>
> (E) To the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral.

W. Va. Code § 46-9-102(64). Furthermore, "[a] security interest attaches to any identifiable proceeds of collateral," and "[a] security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected." *Id.* § 46-9-315(a)(2), (c); *see also id.* § 46-9-203(f) ("The attachment of a security interest in collateral gives the secured party the rights to proceeds provided by section 9-315 and is also attachment of a security interest in a supporting obligation for the collateral.").

There is no dispute that Santander had a perfected security interest in the Vehicle. *See supra* at 4. There is also no dispute that the Vehicle was subsequently damaged and became a total loss, with insurance being payable because of that damage. Under West Virginia law, Santander's security interest extends to "insurance payable" from loss or damage to the Vehicle. *See id.* § 46-9-102(64)(E). Its security interest in the proceeds was perfected without the filing of

---

[1] The Trustee does not appear to dispute Santander's assertion that West Virginia law applies to this case. *See* dkt. 199, at 4-6 (citing to West Virginia's UCC).

a financing statement because its security interest in the original collateral (i.e., the Vehicle) was perfected. *See id.* § 46-9-315(c).

Contrary to the Trustee's assertion, the absence of a loss-payee designation does not extinguish Santander's security interest. While the insurance policy provides the mechanism by which the loss is paid, Santander's security interest still provides a separate route to obtaining the Insurance Proceeds. The Fourth Circuit recognized this distinction in *American Bankers Insurance Co. of Florida v. Maness*, 101 F.3d 358 (4th Cir. 1996). In *Maness*, the Fourth Circuit observed that a second deed-of-trust holder was not listed as a named mortgagee on an insurance policy but nevertheless recognized that, under applicable state law, the creditor's security interest extended to insurance proceeds arising from loss or damage to the collateral. *Id.* at 361 n.2 ("Cenit Bank . . . holds a second deed of trust on the property . . . Neither [insurance] policy lists Cenit as a named mortgagee, but under Virginia law, Cenit's security interest extends to insurance proceeds stemming from loss or damage to the collateral."). Similarly, here, West Virginia law extends Santander's security interest to insurance payable from loss or damage to the collateral. *See supra* at 5. For these reasons, the Court concludes that the absence of Santander as a loss payee on the postpetition insurance policy does not extinguish its security interest in the Vehicle.

The Court also rejects the Trustee's argument that the equities of the case warrant not applying Santander's prepetition security interest to postpetition proceeds. Section 552(b)(1) provides that if a prepetition security agreement extends to proceeds of prepetition property, then the proceeds of such prepetition property continue to be subject to the security interest, unless the court finds, after notice and a hearing, that the "equities of the case" mandate a different result. 11 U.S.C. § 552(b)(1). The bankruptcy court has discretion in determining whether the "equities of the case" exception applies to a particular case. *All Points Cap. Corp. v. Laurel Hill Paper Co.*

*(In re Laurel Hill Paper Co.)*, 393 B.R. 89, 92 (Bankr. M.D.N.C. 2008). This exception is intended to cover a situation where the estate expends funds that increase the value of collateral, resulting in a windfall to secured creditors—for example, "where estate funds are spent in order to convert raw materials into finished inventory that can be sold for more than the raw materials would have brought." *Id.* at 94; *see also Delbridge v. Prod. Credit Assoc. and Fed. Land Bank*, 104 B.R. 824, 826 (E.D. Mich. 1989) ("The purpose of the equity exception is to prevent a secured creditor from reaping benefits from collateral that has appreciated in value as a result of the trustee's/debtor-in-possession's use of other assets of the estate (which would normally go to general creditors) to cause the appreciated value."). Courts consider the following factors in determining whether the equities of the case exception is applicable: "the amount of time and estate funds expended on the collateral, the position of the secured party, and the rehabilitative nature of the bankruptcy case." *Laurel Hill,* 393 B.R. at 93. The cases involving § 552(b)(1) "place the most weight on whether a debtor expended unencumbered funds of the estate, at the expense of the unsecured creditors, to enhance the value of the collateral." *Id.*; *see also Stanziale v. Finova Cap. Corp. (In re Tower Air, Inc.)*, 397 F.3d 191, 205 (3d Cir. 2005) (holding that the equity exception is "normally relevant" in a Chapter 11 case to prevent a secured creditor from reaping benefits from collateral that has appreciated in value due to the use of other assets of the estate).

Applying those factors here, the Debtors filed this case as one under Chapter 13 of the Bankruptcy Code, seeking to achieve a successful rehabilitation. *Cf. Laurel Hill*, 393 B.R. at 93 ("Because the Debtor filed this case to achieve an orderly liquidation rather than to reorganize, there is no rehabilitation at issue here and that factor carries no weight in this case."). It is also true that the Debtors maintained insurance coverage on the Vehicle, paid the postpetition insurance premiums with postpetition earnings, and were forced to provide continuing care for the collateral.

Those factors, standing alone, could support the Court's application of § 552(b)(1)'s equity exception. But the most important factor—whether the Debtors expended unencumbered funds of the estate, at the expense of the unsecured creditors, to *enhance* the value of the collateral—weighs strongly in favor of Santander. This is not a case where there were improvements to the collateral, such as when estate funds are spent to convert raw materials into finished inventory. *See id.* at 94 (rejecting the application of the "equities of the case" exception where there were no "tangible improvements to the secured party's collateral"). Instead, this case presents the opposite scenario: the Vehicle was driven by the Debtors and indisputably depreciated over the course of the Chapter 13 case. *See In re Estes*, 185 B.R. 745, 748 (Bankr. W.D. Ky. 1995) ("First of all, vehicles depreciate in value."); *In re Rives*, No. 05-50750, 2006 Bankr. LEXIS 853, at *3, 2006 WL 1314334, at *1 (Bankr. M.D.N.C. May 4, 2006) ("Vehicles owned by Chapter 13 debtors are driven, which causes them to depreciate."). The parties have not cited any case where a court applied § 552(b)(1)'s equity exception where the collateral decreased in value, and the Court is aware of none.

The Court's holding, however, should in no way be read to condone Santander's conduct, including their years-long failure to retrieve surrendered collateral pursuant to a confirmed plan or their delay in responding to the Debtors' Motion. Santander certainly did not make things easy for the Debtors, particularly when they were recuperating from economic challenges and seeking a successful rehabilitation. *See Lendmark*, 672 B.R. at 887. Frankly, the Court is distressed that Santander, an entity well-versed in bankruptcy law and fully capable of exercising its rights in a timely and efficient manner, will benefit from the diligent efforts of these Debtors to protect the Vehicle even after it was properly surrendered in their Chapter 13 Plan. The

Court does not foreclose the possibility that, under a different set of facts, a party could successfully invoke § 552(b)(1)'s "equities of the case" exception.

Finally, having reached this conclusion, the Court need not decide whether the Insurance Proceeds constitute "property of the estate." "[A] bankruptcy estate includes a debtor's property interests subject to whatever perfected liens and security interests exist." *In re Rivera*, No. 18-11855 (MEW), 2020 Bankr. LEXIS 2269, at *13, 2020 WL 5047422, at *5 (Bankr. S.D.N.Y. Aug. 26, 2020); *see also Trend Mills v. Socher*, 4 B.R. 465, 468 (D.N.J. 1980) ("With bankruptcy, the general pattern calls for all assets of the bankrupt to become part of the bankruptcy estate, but only to the extent of his interest. If his interest be subject to a lien, whether by judgment, mortgage or otherwise, the estate receives it subject to that lien."). Accordingly, even assuming that the Insurance Proceeds are property of the estate, the estate would receive the property subject to Santander's perfected security interest. *See supra* at 5-8.

**III.**

For the foregoing reasons, it is hereby

**ORDERED** that the Debtors' Motion is **DENIED**; and it is further

**ORDERED** that the Insurance Proceeds shall be paid to Santander to the extent of its secured claim, and any remaining proceeds shall be transmitted to the Chapter 13 Trustee for distribution as otherwise provided by the Bankruptcy Code and the Plan.

**It is so ORDERED.**